### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RAMANAND PERSAUD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-05-09-R |
| | ) | |
| JOHN DOE, T. BUTTS, DR. GOFORTH, | ) | |
| L. WALKER, T. KELSO, C. WILLIAMS, | ) | |
| E. BARBY, J. PARKER, UNITED STATES | ) | |
| OF AMERICA, and UNITED STATES | ) | |
| ATTORNEY, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, a federal prisoner appearing *pro se*, brings this action pursuant to the Federal

Tort Claims Act 28 U.S.C. § 2671 *et seq.* ("FTCA") and *Bivens v. Six Unknown Named*

*Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), seeking damages for

alleged negligence and violations of his constitutional rights.  The matter has been referred

for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).  A Special Report

[Doc. #39] was prepared and submitted by the Federal Bureau of Prisons at the Court's

direction.

Pending before the Court are five motions.  Defendants Walker, Kelso and Barby have

filed a Motion for Summary Judgment and Brief in Support [Doc. #48].  Defendants Butt and

Goforth have filed a separate Motion for Summary Judgment and Brief in Support [Doc. #49]

as have Defendant United States of America [Doc. #50] and Defendant Parker [Doc. #53].

Plaintiff has filed a Response in Opposition to Defendant's [sic] Motion for Summary

Judgment [Doc. #67] and a Motion for Sanctions [Doc. #61].  For the reasons set forth below,

it is recommended that summary judgment be granted in favor of all Defendants and that

Plaintiff's Motion for Sanctions be denied.

## Background

Plaintiff states that on January 20, 2004, prison officials at FCI Elkton, Ohio, informed

him that he was to be transferred to FCI Schuylkill in Pennsylvania.  Complaint at 4.  On

February 19, 2004, Plaintiff was temporarily transferred to the Federal Transfer Center in

Oklahoma City (FTC OKC) en route to FCI Schuylkill.  On April 6, 2004, Plaintiff was

transferred from FTC OKC to FCI Schuylkill.  Complaint at 9.

Plaintiff contends that Defendant John Doe, a Release and Delivery Officer at FCI

Elkton, used metal ankle cuffs to secure Plaintiff's legs instead of flexicuffs as allegedly

required by Plaintiff's medical records.  Plaintiff states that the metal ankle cuffs caused him

severe pain because they rubbed against steel screws which had been surgically inserted to

repair his left ankle after an automobile accident.  Plaintiff further states that the pain was

exacerbated by the improper shoes he was forced to wear.  Complaint at 5.

Plaintiff states that when he arrived at FTC OKC, his ankle was bleeding.  He states

that the Ace wrap and ibuprofen prescribed by Defendants did not control the ankle pain

which he suffered throughout his stay at FTC OKC.  Complaint at 6-9.

Plaintiff states that he was again placed in metal ankle cuffs for his transfer from FTC

OKC to FCI Schuylkill on April 6, 2004.  Complaint at 9.  On May 28, 2004, Plaintiff

underwent surgery to remove the screws from his ankle.  *See* Special Report at 11 and Ex. 2 at 22.

**Plaintiff's Claims**

In Count One, Plaintiff alleges that Defendant John Doe R&D Officer at FCI Elkton was deliberately indifferent to Plaintiff's health in that he intentionally refused to follow medical directions to use flexicuffs rather than metal ankle cuffs.

In Count Two, Plaintiff alleges that Defendant Butt, Associate Warden at FTC OKC, was deliberately indifferent to Plaintiff's serious medical needs in that she "personally saw and interviewed [Plaintiff] in regards to the leg injury, advising [Plaintiff] to contact [Defendant] Goforth."

In Count Three, Plaintiff alleges that Defendant Goforth, Clinical Director of FTC OKC, was deliberately indifferent to his serious medical needs in that he "personally reviewed oral statements and written documentation in regards to [Plaintiff's] leg injury."

Counts Four through Eight contain identical allegations of deliberate indifference to Plaintiff's serious medical needs against Defendants Walker, Kelso, Williams, Barby, and Parker.  Each of these Defendants provided health services to Plaintiff during his stay at FCI OKC.  Plaintiff alleges that each of these Defendants "personally saw and treated [Plaintiff] in regards to the leg injury."

In Count Nine, Plaintiff asserts a claim against the United States of America pursuant to the FTCA based on the alleged negligence of the unidentified R&D officer at FCI Elkton and Defendants Butt, Goforth, Walker, Kelso, Williams, Barby, and Parker at FTC OKC.

3

**Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The Tenth Circuit has recently reiterated how a court should review a motion for summary judgment:

> When applying this standard, [a court] view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party.  Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim.  Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof. The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant.

*Garrison v. Gambro, Inc.*,  428 F.3d 933, 935 (10th Cir. 2005) (*citing Simms v. Okla. ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (quotation marks, citations, and brackets omitted)).

**Motion for Summary Judgment of Defendants Butt and Goforth**

During the time period relevant to this action, Defendant Teresa Butt was the Associate Warden at FTC OKC, and Defendant Tom Goforth, M.D., was the Clinical Director at FTC OKC.  Although Plaintiff alleges that these Defendants were deliberately indifferent to his serious medical needs, these Defendants deny that they had any direct and personal participation in any decisions about Plaintiff's medical care.

Defendant Butt states in her Declaration that as Associate Warden, she made rounds at FTC OKC to ensure that the institution was running properly.  *See* Motion [Doc. #49] Ex. 2.  She states that if an inmate presented her with a basic medical question, she instructed the inmate to make sick call or send a request to the staff for medical treatment.  She further states that her routine practice of handling an inmate's open wound or emergency medical need was to contact the physician on call so that the inmate could be examined the same day.  She states, however, that she has no memory of Plaintiff.  In response, Plaintiff states that Defendant Butt visited his unit on March 12, 2004, and that he brought to her attention his need for treatment.  He further states that she directed him to contact the clinic director.  *See* Plaintiff's Affidavit attached to his Response [Doc. #67].

In Dr. Goforth's Declaration attached to the Motion as Exhibit 1, Defendant Goforth states that he does not normally examine or treat inmates unless an inmate is referred to him for a specific problem.  He further states that during Plaintiff's 47-day stay at FTC OKC Plaintiff was not referred to him for any reason.  The absence of any mention of Defendant Goforth in the medical records supports Defendant Goforth's contention that he was not directly involved in Plaintiff's medical treatment.  Plaintiff's Response to the Motion fails to bring forth any facts showing Dr. Goforth's involvement in Plaintiff's medical care.

To establish liability for civil rights violations under *Bivens*, a plaintiff must show that a defendant directly and personally participated in the alleged constitutional violation.  *See Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003).  In this case, the evidence is not sufficient to create an inference of direct and personal participation by either

5

Defendant Butt or Defendant Goforth in the alleged constitutional violations. Because Plaintiff has not brought forth specific facts showing a genuine issue for trial as to these Defendants, it is recommended that the Motion for Summary Judgment of Defendants Butt and Goforth be granted.

## Motions for Summary Judgment of Defendants Barby, Kelso, Walker and Parker

Defendants Barby, Kelso, Walker and Parker have also moved for summary judgment on Plaintiff's *Bivens* claims. Plaintiff alleges that these Defendants were deliberately indifferent to his serious medical needs.[1]

It is well established that the conditions of prisoner confinement create an obligation to provide inmates with adequate health care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "[P]rison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.'" *Self v. Crum*, ___ F.3d ___, 2006 WL 541248 at *2 (10th Cir. Mar. 7, 2006) (to be published) (*quoting Estelle v. Gamble* at 104). A claim based on deliberate indifference has both a subjective and an objective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). "The objective component is met if the deprivation is 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834

---

[1]Defendant Parker describes herself as an Advanced Registered Nurse Practitioner and a Mid-Level Contract Practitioner at FTC OKC. Defendants Barby, Kelso and Walker are all employees of the Bureau of Prisons and are therefore represented by the United States Attorney. Defendant Parker, an independent contractor, is represented by private counsel. All of these Defendants were involved in providing medical services to Plaintiff, however, and the claims against them and their defenses are similar. Therefore, the motions submitted by these Defendants will be considered together.

(1994) (quotation omitted)). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quotation omitted).

Not all failures to provide healthcare, however, rise to the level of a constitutional violation.  Indeed, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. at 106.  Where medical treatment has been provided, and there has been no intentional delay or interference with an inmate's care, mere failure to provide additional care beyond what is medically required will neither constitute "an unnecessary and wanton infliction of pain" nor be "repugnant to the conscience of mankind."  *Id.*

Plaintiff's prison medical record is attached to the Special Report as Exhibit 2.  On December 3, 2002, Plaintiff was seen at the Health Services Department at MDC Brooklyn. Plaintiff requested a slip which would allow him to wear sneakers and be assigned to a lower bunk.  Plaintiff also requested a slip requiring the use of flexicuffs rather than metal cuffs on his left foot.  Special Report Ex. 2 at 1-2.  The health services worker filled out a Medical Report of Duty Status form recommending that Plaintiff be assigned a bottom bunk and that he be allowed to wear sneakers.  The form also requested the use of flexicuffs on Plaintiff's left ankle "due to protruding steel rods [and] screws."  The form was dated December 3, 2002, and was to remain effective until December 3, 2003.  Special Report Ex. 2 at 25.

When Plaintiff arrived at FTC OKC on February 19, 2004, he was examined for medical clearance by S. Craiger, R.N.[2] Ms. Craiger determined that Plaintiff was approved for general population housing, temporary work assignment, and continued transport. She noted on the in-take medical screening form that Plaintiff had no disabilities and no current complaints. Special Report Ex. 2 at 34. In her Declaration attached to the Supplement to Defendants' Motion for Summary Judgment [Doc. #73] as Exhibit 1, Ms. Craiger states that Plaintiff did not indicate he had a problem with his ankle during the medical screening. Ms. Craiger states that if Plaintiff had complained about his ankle during his medical clearance, she would have "noted the complaint, observed the ankle and called the Physician's Assistant for further evaluation and treatment had there been an open wound."

On February 23, 2004, Plaintiff sought medical treatment and was seen by Defendant Barby. The medical note reveals that Plaintiff was given an over-the-counter antihistamine. Special Report at 7; Ex. 2 at 3. There is no mention of ankle pain in the medical note. In his Declaration attached to the Motion for Summary Judgment of Defendants Barby, Kelso, and Walker as Exhibit 2, Defendant Barby states that he saw Plaintiff only one time, that he prescribed an antihistamine, and that the medical records indicate that Plaintiff did not complain of ankle pain.

On February 26, 2004, Plaintiff was seen by Defendant Kelso who prescribed an antifungal cream. Special Report at 8; Ex. 2 at 3. In her Declaration, attached to the above-

---

[2]Ms. Craiger is not a party to this case.

referenced Motion for Summary Judgment as Exhibit 3, Defendant Kelso states that on this date Plaintiff complained only about athlete's foot with scaling, but no pain.

The medical record indicates that Plaintiff complained of ankle pain to FTC OKC prison officials for the first time on March 2, 2004, at which time Defendant Kelso prescribed Motrin and an Ace wrap.  Special Report Ex. 2 at 3.  Defendant Kelso states in her Declaration that she examined Plaintiff's left ankle for the first time during the March 2, 2004 visit.  Defendant Kelso states that the pedal pulse was normal, that there was no evidence of deformity, and that the ankle skin was intact.

On March 9, 2004, Plaintiff was seen by Defendant Williams.[3]  The medical note states that Plaintiff complained of ankle pain which he rated at 4 out of 10.  Defendant Williams prescribed ibuprofen and an Ace wrap and explained the policy regarding orthopedic shoes.  Special Report Ex. 2 at 3.[4]

On March 18, 2004, Plaintiff was seen by Defendant Parker who prescribed Motrin. On March 23, Defendant Parker prescribed antifungal cream.  Special Report Ex. 2 at 4.  In her Affidavit attached to her Motion for Summary Judgment, Defendant Parker states that she prescribed both of the above-referenced medications pursuant to established protocol and that Plaintiff did not complain of or present symptoms consistent with significant ankle pain.

---

[3]As discussed in further detail below, Defendant Williams has not been served.

[4]The author of the Special Report states that FTC OKC does not normally purchase orthopedic shoes for holdover inmates because of the short duration of their confinement at that facility and the lengthy process of fitting and procuring such shoes.  Special Report at 8.

On March 26, 2004, Plaintiff sought medical treatment for the last time at FTC OKC. He was seen by Defendant Walker.  Special Report Ex. 2 at 4.  In his Declaration attached to the Motion for Summary Judgment of Defendants Barby, Kelso, and Walker, Defendant Walker states that he prescribed triple antibiotic ointment for chapped lips or skin.  He further states that the medical records do not indicate that Plaintiff complained of ankle pain during the visit.

Defendant Goforth, Clinical Director of FTC OKC, states in his Declaration, attached to the above-referenced Motion for Summary Judgment as Exhibit 5, that Plaintiff's ankle problems were the result of a motor vehicle accident in 1988 or 1989.  He states that surgical screws began to work loose as a "normal complication" of the earlier surgery and that in his opinion, the metal ankle cuffs did not cause Plaintiff's ankle problems.  *See* Declaration of Goforth at 2.  Defendant Goforth also stated that, in his opinion, the medical care rendered to Plaintiff at FTC OKC was "at all times within the applicable standard of care."  *Id.*

None of the medical evidence in this case indicates that Plaintiff suffered ankle pain to the degree alleged in his Complaint.  Plaintiff's own estimate of his pain noted in the medical record as four on a scale of one to ten indicates only moderate pain.[5]  Moreover, Plaintiff received medical care at FTC OKC for a variety of complaints.  During each of his

---

[5]The Mankoski Pain Scale is a tool used by practitioners to help patients communicate the degree of pain they are suffering.  A rating of four is described as pain that "can be ignored if you are really involved in your work, but still distracting."  According to the scale, pain at this level can be relieved by mild painkillers for 3-4 hours.  *See* Mankoski Pain Scale, www.valis.com/andi/painscale.html.  Another pain scale rates four as "moderate" pain.  *See* Pain Scale, www.vistacare.com/hospice/tools/pain_scale.php.

eight visits to the health unit, Plaintiff was prescribed medication appropriate to the complaint he lodged on that particular day.   Plaintiff's affidavit states that Plaintiff mentioned his ankle pain each time he was seen at the clinic and that generally the medical personnel expressed a hope that he would be transferred soon to his final destination where he could receive other treatment.   *See* Plaintiff's Response, Affidavit at 2-3.   Even accepting as true Plaintiff's version of his communications with these Defendants, the medical care Plaintiff received during his brief stay at FTC OKC does not evidence deliberate indifference to a serious health risk by any of the defendant staff members, and Plaintiff has not brought forth specific facts showing a genuine issue for trial.   It is therefore recommended that the Motion for Summary Judgment of Defendants Barby, Kelso and Walker be granted.   It is further recommended that the Motion for Summary Judgment of Defendant Parker be granted.

### *Bivens* Claims Against Defendants Doe and Williams

On April 4, 2005, Plaintiff filed a Praecipe for Summons as required by LCvR 4.1 [Doc. #16].   Plaintiff has never identified Defendant Doe by name and did not include Defendant Doe on the Praecipe for Summons.   Plaintiff did list "C. Williams" on the Praecipe for Summons, but the only address given for Williams was that of FTC OKC.   The Process Receipt and Return for C. Williams [Doc. #23] was returned unexecuted with the notation that C. Williams no longer works for BOP or the staffing company, and that she left no forwarding address.

11

Rule 4(c)(1) of the Federal Rules of Civil Procedure requires that a defendant in a civil case be served with a summons and a copy of the complaint. Rule 4(e)(2) governs service upon an individual. An individual may be served:

> by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or ususal place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2). In this case, service of the summons and complaint upon Defendant Williams' former employer does not satisfy the requirement of Rule 4(e)(2). Plaintiff made no further effort to serve Defendant Williams.

Additionally, Plaintiff has failed to timely effect service of process. Rule 4(m) sets forth the time limit for service of the summons and complaint:

> If service of summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m). In this case, Plaintiff has not effected service upon either Defendant Williams or Defendant Doe, nor has he shown good cause or offered any explanation for his failure to serve these Defendants. He is not, therefore, entitled to a mandatory extension of time under Rule 4(m). The Court must nevertheless consider whether circumstances are sufficient to justify a permissive extension of time. *See Espinoza v. United States*, 52 F.3d 838, 840-841 (10th Cir. 1995).

*Espinoza* sets forth factors to be considered in determining whether to grant a permissive extension of time to effect service. *Id.* at 842. The first factor a court should consider is whether the statute of limitations would bar a refiled action. Plaintiff complains of actions allegedly arising during a February 19, 2004 transfer and subsequent medical care through April 6, 2004. It appears, therefore, that the applicable statute of limitations might bar his claims in a refiled action against these Defendants.[6] The first factor alone, however, is not dispositive. Another factor to consider is whether the plaintiff has tried but been unsuccessful in an attempt to serve the party. As set forth, Plaintiff has never attempted to serve Defendant Doe, and he made only one attempt to effect service on Defendant Williams. Another factor to consider is whether a defendant has attempted to avoid service. *See Hendry v. Schneider*, 116 F.3d 446, 449 (10th Cir. 1997). In this case, there is no evidence that either Defendant Doe or Defendant Williams has attempted to avoid service of process. Plaintiff has not sought an extension of time to serve these Defendants. Under these circumstances, a permissive extension of time is not warranted.

In sum, Plaintiff has failed to properly and timely effect service of process on Defendants Doe and Williams, and no facts or circumstances appearing in the record warrant an extension of time to do so. It is, therefore, recommended that the *Bivens* claims against these Defendants be dismissed without prejudice for lack of service of process.[7]

---

[6]The statute of limitations for 42 U.S.C. § 1983 claims arising in Oklahoma is two years. *See Meade v. Grubbs*, 841 F.2d 1512, 1524 (10th Cir. 1988).

[7]Allowing Plaintiff an extension of time in which to serve Defendant Doe would be futile. As discussed in further detail below, Plaintiff cannot show that Defendant Doe's use of metal ankle
(continued...)

## Motion for Summary Judgment of Defendant United States of America

Plaintiff's first FTCA claim against the United States is premised on the alleged negligence of the prison official in Elkton, Ohio, who secured Plaintiff's ankles with metal cuffs for the purpose of his transfer to FTC OKC.  According to Plaintiff, the  unidentified "R&D Officer" was negligent in "denying reasonable requests to follow medically directed conduct."  According to Plaintiff, the use of the metal ankle cuffs caused his ankle problems.  Complaint at 10.  Plaintiff states that the R&D Officer should have followed the "medical directives" to use flexicuffs.

The "medical directive" to which Plaintiff refers is attached to his Complaint and to the Special Report Ex. 2 at 25.  The Medical Report of Duty Status does request prison officials to use flexicuffs.  From the medical record, it is clear that Plaintiff, himself, asked for and received the Medical Report of Duty Status which contained the request.  *See* Special Report Ex. 2 at 1-2.  On its face, however, the medical report was effective only from December 3, 2002, through December 3, 2003.  Contrary to Plaintiff's allegations, there was not an effective, up-to-date medical directive in his file mandating the use of flexicuffs.

---

[7](...continued)
cuffs rises even to the level of negligence, much less to deliberate indifference, as required in a *Bivens* action.  As to Defendant Williams, medical records attached to Plaintiff's Complaint reveal that this Defendant saw Plaintiff one time on March 9, 2004.  Defendant Williams noted "an old healed scar" on Plaintiff's ankle.  Plaintiff reportedly complained of ankle pain which he rated as a four out of ten.  Defendant Williams treated Plaintiff with ibuprofen and an Ace bandage, according to protocol, and informed Plaintiff of the policy at FTC OKC regarding orthopedic shoes.  Complaint Ex. P at 1.  Given the recommendation that summary judgment be granted in favor of the other Defendants who treated Plaintiff's ankle pain in a similar manner, allowing Plaintiff an extension of time to serve Defendant Williams would also be futile.

Moreover, in his Complaint, Plaintiff states he was informed of his pending transfer on January 20, 2004.  Plaintiff was not transferred, however, until February 19, 2004.  Despite the fact that Plaintiff had previously asked for and received a medical directive authorizing the use of flexicuff, there is no evidence that during the month before his transfer to FTC OKC Plaintiff sought a new medical directive requesting the use of flexicuffs.  There was no up-to-date medical restriction against the use of metal ankle cuffs in Plaintiff's medical record.  The evidence before the Court is insufficient to create an inference that the officer's failure to follow an expired medical directive in the context of a prisoner transfer constitutes negligence.  Plaintiff has not brought forth facts upon which a reasonable jury could find in Plaintiff's favor on this claim of negligence.

Plaintiff's second FTCA claim is based on the alleged medical negligence of the FTC OKC Defendants.  Under Oklahoma law, the elements necessary to establish a *prima facie* case of negligence are: "(1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly exercise or perform that duty and (3) the plaintiff's injuries are proximately caused by the defendant's failure to exercise his duty of care."  *McKellips v. Saint Francis Hosp., Inc.*, 741 P.2d 467, 470 (Okla. 1987) (citations omitted).[8]  Moreover, under Oklahoma law, a plaintiff generally must provide expert medical testimony to support a *prima facie* case of medical negligence:

---

[8]"State substantive law applies to suits brought against the United States under the FTCA." *Hill v. SmithKine Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004).  *See also* 28 U.S.C. § 1346(b).

> It is well settled that in all but the extraordinary medical malpractice case, the plaintiff has the burden of producing expert testimony to support a prima facie case of negligence.  If the origin of the injury is subjective or obscure and not readily apparent to a layman, or if there are several equally probable causes of the condition, testimony of a qualified physician is essential to establish a reasonable probability the physician's negligence caused the injury.

*Roberson v. Jeffrey M. Waltner, M.D., Inc.*, 108 P.3d 567, 569 (Okla. Civ. App. 2005).

In this case, Plaintiff has provided no expert opinion or medical testimony to support his claim of medical negligence.  In fact, the only medical opinion in the record is that of Defendant Goforth, who stated in his Declaration attached to Defendant United States' Motion for Summary Judgment that in his opinion, Plaintiff's ankle problem was caused by the surgical screws working loose, which Defendant Goforth described as a "normal complication resulting from [Plaintiff's] 1988 or 1989 automobile accident and internal fixation."  Declaration at 2.  After outlining the care Plaintiff received at FTC OKC, Defendant Goforth stated that in his opinion, "the care and treatment rendered to [Plaintiff] by FTC medical personnel . . . was at all times within the applicable standard of care . . . and did not cause or contribute to, any injury to Plaintiff."  *Id.*  Under Oklahoma law, "evidence of [the] medical standard in the community may be established by testimony of the defendant physician."  *Id.*  Therefore, Defendant Goforth's statement is sufficient to establish the medical standard in the community and to provide medical opinion as to causation.

Plaintiff's evidentiary response consists only of his own affidavit.  On the issue of causation, he states: "On May 3, 2004, after multiple diagnostic tests, an orthopedic surgeon examined my left ankle and ordered immediate surgery to correct the damage obviously

caused by the metal shackles."  Plaintiff's Response, Affidavit at 3, ¶ 29.  Contrary to this unsupported statement, however, is the medical record which shows that upon arrival and thereafter at FCI Schuylkill Plaintiff was provided a medical screening and treatment and the medical personnel noted (1) "a well-healed surgical scar," (2) that his left ankle pain was 2nd [secondary] to old trauma," (3) that he was told that the screws needed to come out after six years,[9] (4) that the orthopedic surgeon diagnosed him with "loose screws in left ankle from previous [surgery on] left ankle" and (5) the orthopedic surgeon recommended surgical removal of loose screws "soon."  Special Report Ex. 2 at 5-7, 16.  Nothing in the medical record constitutes medical opinion that the treatment Plaintiff received at FTC OKC was below the standard of care or in any way caused a medical emergency or injury requiring surgery.

The record is devoid of any medical opinion that would create a genuine issue for trial on Plaintiff's FTCA claims.  *See Esposito v. United States*, No. 05-3099, 2006 WL 281102 at *5 (10th Cir. Feb. 7, 2006) (summary judgment properly granted where Kansas law required medical expert testimony to establish elements of negligence claim and plaintiff presented none in response to United States' motion for summary judgment; the alleged lack of reasonable medical care for prisoner was not within "common knowledge" exception and

---

[9]The original surgery on Plaintiff's ankle was performed in 1988 or 1989 -- approximately fifteen years prior to the time period at issue in this action.

required medical opinion) (unpublished op.).[10]  It is therefore recommended that the Motion

for Summary Judgment of Defendant United States be granted.

**Plaintiff's Motion for Sanctions**

Plaintiff has moved for sanctions to be imposed against Defendants for their alleged

failure to comply with his discovery requests.  On August 8, 2005, Plaintiff filed a motion

seeking limited discovery.  On September 1, 2005, this Court granted Plaintiff's motion, to

the extent that it "sought permission to proceed with discovery requests submitted to

Defendants in compliance with the Federal Rules of Civil Procedure." *See* Order [Doc. #47].

The Court noted, however, that a Special Report had been prepared and filed at the Court's

direction for the purpose of assembling information and documents relevant to the claims

asserted in the action.  Plaintiff was directed not to seek discovery that would be duplicative

of the information and documents already included in the Special Report. *Id.* at 2.

In his Motion for Sanctions, Plaintiff states that on September 9, 2005, he requested

the following documents which were not produced by Defendants:

> (A) Plaintiff requires this full medical file including all x-rays before and after
> Plaintiff's surgery that might be able to properly respond to defendants motion
> for Summary Judgment.  Plaintiff needs copies of his medical records and x-
> rays from Reading Medical Center/Hospital, where Plaintiff had the re-
> constructive surgery done on his left ankle.
>
> (B) Plaintiff requests a complete [sic] of any and all documents generated in
> regards to Plaintiff [sic] transfer to Federal Prison Camp, Schuylkill, or other

---

[10]Unpublished opinions are cited for their persuasive value pursuant to Tenth Circuit Rule
36.3.

written text Memoranda, or known Duty Status Reports generated prior to Plaintiff [sic] Designation to Federal Prison Camp, Schuylkill.

Motion for Sanctions at 1.

Defendant Parker has filed an Objection to Plaintiff's Motion for Sanctions [Doc. #66]. Defendant Parker states that "Plaintiff has propounded no discovery requests of any kind to Parker." *Id.* at 2.

The other Defendants have also responded to Plaintiff's Motion [Doc. #68]. According to the letter attached as Exhibit 1 to Defendants' Response, the Defendants produced to Plaintiff a copy of his BOP medical records but informed Plaintiff that they do not have "custody or control" of medical records from private medical facilities. Further, the letter informed Plaintiff that BOP records regarding his transfer are part of his "Central Inmate File," and that Plaintiff could review those records "in accordance with BOP policy."

The Court notes that although the actual x-rays are not included in the Special Report, relevant radiological reports and medical records regarding the surgery on Plaintiff's left ankle are included. *See* Special Report Ex. 2 at 21-24.[11] The Medical Duty Status Report was also included. *See* Special Report Ex. 2 at 25. The Special Report also contains other records and information relating to Plaintiff's transfer and medical care. The Certificate of Service attached to the Special Report states that it was mailed to Plaintiff on June 30, 2005. Therefore, Plaintiff had possession of the medical records and other information he sought

---

[11]The Special Report was prepared by An Tran, an Attorney-Advisor at the Federal Transfer Center.

through discovery at least three months before he requested production of these documents.

Further, Defendants informed Plaintiff that he could have access to other records relating to

his transfer by viewing his Central Inmate File in accordance with BOP policy. The Special

Report contains pertinent documents relating to the transfer, and Plaintiff does not identify

what other documents relating to the transfer are needed for this case. Under these

circumstances, Plaintiff has shown no grounds for imposing sanctions against Defendants.

*See* Fed.R.Civ.P. 37. Accordingly, it is recommended that Plaintiff's Motion for Sanctions

be denied.

## RECOMMENDATION

It is recommended that the Motions for Summary Judgment [Docs. ##48, 49, 50, 53]

be granted in favor of Defendants Barby, Kelso, Walker, Parker, Butt, Goforth and United

States. It is recommended that the claims against Defendants Doe and Williams be dismissed

without prejudice for lack of service of process. It is further recommended that Plaintiff's

Motion for Sanctions  [Doc. #61] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation.

*See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court

by April  18th , 2006. *See* LCvR72.1. The parties are further advised that failure to make

timely objection to this Report and Recommendation waives the right to appellate review of

the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir.

1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __29th__ day of March, 2006.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE